**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

FAIRVIEW RITZ CORPORATION,          :
                                    :
          Plaintiff                 :
                                    :
     v.                             :          **Civil Action No. 09-0875 (JLL)**
                                    :
BOROUGH OF FAIRVIEW et al.,         :
                                    :          **OPINION**
          Defendants                :
_____

## I. INTRODUCTION

Before the Court is a motion by Defendants Borough of Fairview, Borough of Fairview

Police Department, and Anthony F. Anari ("Defendants") seeking sanctions for alleged discovery

abuses by Plaintiff Fairview Ritz Corporation ("FRC" or "Plaintiff").  Plaintiff brings this action

pursuant to 42 U.S.C. § 1983, alleging that police unconstitutionally conducted a search of its

business–a fitness center and day spa[1]–on suspicion of prostitution activities and unlawfully

revoked its business license.  In addition to seeking declaratory and injunctive relief, Plaintiff

seeks compensation for the lost value of its business.

At issue in Defendants' sanctions motion is a twenty-page document that was originally

in the files of Plaintiff's accountant when Defendants served a subpoena on the accountant, and

is now purportedly lost.  Defendants argue that the loss of this document amounts to spoliation as

---

[1] According to its complaint, Plaintiff offers "holistic services" to its members, including
"stretching, cardiovascular training, energy balancing, non-therapeutic massage, and other fitness
modalities designed to promote relaxation, physical and mental well-being, self-awareness and
spiritual harmony."  Complaint, ECF No. 1, ¶ 15.

1

Plaintiff's counsel failed to preserve the document after removing it from the accountant's files despite Defendants' subpoena. Defendants seek a range of sanctions:

1. To preclude Plaintiff from seeking any economic recovery based on the financial condition of FRC. In support of this sanction, Defendants argue that the document purportedly relates to the valuation of Plaintiff's business.

2. As an alternative to No. 1, that the Court give an adverse-inference instruction to the jury. Defendants would have the instruction state that the jury can infer from the absence of the document that the document would have been unfavorable to Plaintiff's claim for economic damages.

3. The imposition of attorney's fees and costs to compensate Defendants for their time and effort seeking production of the now lost document.

In addition, Plaintiff makes an informal application for spoliation. The Court heard oral argument on Defendants' motion and Plaintiff's application on January 7, 2013. For the reasons below, Defendants' motion is granted in part and denied in part. Plaintiff's application is denied.

## II. BACKGROUND

The factual allegations underlying the Complaint are lengthy and largely unrelated to the instant motion. The Complaint alleges that Defendants unlawfully targeted Plaintiff's business as being a cover for prostitution. Compl. ¶ 22. All prostitution charges were eventually dismissed. Id. at ¶ 23. Plaintiff further alleges that as a result of Defendants' actions, including an allegedly unlawful search and seizure of the premises, Plaintiff was forced to shut down the business, which has not reopened. Id. at ¶¶ 22, 24. Therefore, a key issue in this matter is the value of Plaintiff's business before and after it was shut down. Plaintiff seeks to recover this value as a measure of compensatory damages, in addition to seeking declaratory and injunctive relief from a borough ordinance regarding licensing.

Defendants propounded two sets of discovery requests seeking documents related to the

valuation of Plaintiff's business, first on August 7, 2009, and then on December 2, 2009.[2]
Certification of Ruby Thompson in Support of Defendants' Motion ("Thompson Cert."), Exs. A,
G.  Plaintiff responded that no such documents existed.  Thompson Cert., Ex. J.  During a
deposition of Plaintiff's Rule 30(b)(6) witness, Defendants learned that some documents did
exist.  Thompson Cert., Ex. K.  Defendants then issued a subpoena to Plaintiff's accountant,
Michael Condosta, C.P.A.  Neither Condosta nor Plaintiff objected to the subpoena.

       After Condosta prepared documents for inspection, but before they were made available
to the Defendants, Plaintiff's counsel (Michael Simitz, Esq.) without notice to any other party,
reviewed Condosta's files and removed two file folders of documents.  October 28, 2011,
Affidavit of Michael J. Condosta, C.P.A., attached as Exh. P to Thompson Cert.  In an affidavit
submitted in this litigation, Mr. Condosta provided the following information:

1.      A week before the return date of the subpoena, Mr. Simitz appeared at Mr. Condosta's office to review the documents that Mr. Condosta was placing into boxes to respond to the subpoena.

2.      Mr. Condosta maintained those documents in a section of his file cabinet that would have related solely to FRC.

3.      Mr. Condosta never sought nor received guidance from Mr. Simitz as to what documents to supply in response to the subpoena.

4.      Mr. Simitz removed two file folders that already had been placed in the box to respond to the subpoena, stating that those folders contained Ron Stone's personal files, including medical and legal bills.

5.      Mr. Simitz took those folders with him when he left Mr. Condosta's office.

---

[2] Defendants also argue that information relating to the valuation of Plaintiff's business was required under Rule 26(a), which required Plaintiff to make available "documents or other evidentiary material...on which each computation [of damages] is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. Proc. 26(a)(1)(A)(iii).

6.      Mr. Condosta otherwise would have produced those documents in response to the subpoena.

Id. ¶¶3-9.  Mr. Simitz admitted to removing the documents and claimed that he did so because

the documents were privileged and were related to FRC.  Id.

On April 18, 2011, Mr. Simitz sent defense counsel a one-page letter purporting to be a

privilege log.  Thompson Cert. Exh. Q.  The letter stated:

> Please accept the following privilege log relative to documents responsive to your subpoena:
>
> 1.      12 pages of correspondence between Fairview Ritz and Law Offices of Dennis Oury, LLC;
>
> 2.      20 pages of correspondence between Fairview Ritz and Scott D. Finckenauer, Esq.
>
> I have also spoken to Mr. Condosta, and he will be providing your office the original documents and files.  Once your inspection and/or copying is complete, please contact my office to arrange return to this office.  The documents do not have to be returned to Mr. Condosta, and you will not have to make any copies for this office as we will be in possession of the originals.  Please be guided accordingly.

Id.  The twelve pages of correspondence identified in Item 1 in the April 18, 2011, letter are not

part of this dispute.

Defendants became aware of the fact that Mr. Simitz had removed the files from Mr.

Condosta, and brought the matter to the Court's attention.  Then-Magistrate Judge Cecchi

ordered Condosta to "provide a full and complete privilege log."  June 6, 2011 Order (ECF No.

30).  Defendants claim that after repeated and unsuccessful attempts to have Plaintiff produce the

privilege log, they asked the Court to compel its production on July 20, 2011.  On August 9,

2011, Magistrate Judge Falk held a status conference and ordered the production of the log.  By

letter dated August 9, 2011, Plaintiff produced a more detailed description of the first twelve

pages of documents it was withholding as privileged.  Thompson Cert. Exh. R.  As Plaintiff's

counsel explained during oral argument on January 7, 2013, counsel did not produce a more

detailed log of the second, twenty-page, document because, by that point, Plaintiff's counsel had

more closely inspected the document and determined it related to another business, and not FRC.

The log was deficient and on September 9, 2011, this Court also ordered production of a

full log.  September 9, 2011 Order (ECF No. 38) ("[C]ounsel for plaintiff shall produce to

counsel for the defendants a full and complete privilege log for all documents for which plaintiff

claims privilege.").  By this point, Plaintiff's counsel had retreated from claiming that the twenty-

page document was privileged.  Plaintiff's counsel instead described that document as a twenty-

page contract that belonged to an unrelated third-party, Pinetree Holistics Corporation

("Pinetree").  Plaintiff's counsel also stated that he no longer had possession of the document at

issue.[3]  See June 23, 2011, Letter, attached to Jan. 8, 2013, Letter from Michael Simitz, Esq.,

ECF No. 62, at page 25 ("This was actually a communication between Scott Finckenauer and a

third party unaffiliated with the Fairview Ritz.").  As Plaintiff's counsel explained in a December

2011, hearing, he mailed the twenty-page document to Ron Stone, the owner of Pinetree, a

---

[3] Plaintiff's counsel's description of this documents has changed as this dispute has
evolved.  For months, counsel represented that the documents were correspondence, largely
billing records, between FRC's counsel and Mr. Condosta.  See Thompson Cert. Exhs. Q-R.
Later, however, Plaintiff's counsel explained "[t]hat document actually was another corporation's
document that was involved, another employee of Fairview Ritz that was involved, another
employee of Fairview Ritz, another corporation.  So actually it was outside the subpoena.  It's
outside – out of my control.  I actually returned it to that third party."  Transcript of Sept. 9, 2011,
Hrg., Thompson Cert. Exh. S, at 5:14-5:24.  Still later, and during argument on January 7, 2013,
Plaintiff's counsel represented that the document was a draft employee handbook containing
annotations or mark-ups by Ron Stone, the owner of Pinetree Holistics Corporation, and his
separate legal counsel.

former client of Mr. Simitz's firm.  See December 14, 2011 Hearing Tr. at 3-4.  It is clear

Plaintiff's counsel provided the document to Mr. Stone without preserving the document and

without bringing the matter to the attention of either defense counsel or the Court.

      Ron Stone was also a former consultant for FRC and Defendants allege that there were

significant connections between FRC and Pinetree Holistics Corporation.  Def. Br. at 9-10.

During oral argument on January 7, 2013, Defendants pointed to other evidence of Mr. Stone's

association with both FRC and Pinetree, including: (1) commingling of funds and employees

who worked for both FRC and Pinetree; (2) Mr. Stone holding himself out as President of FRC;

and (3) Mr. Stone authorizing payment of invoices on behalf of FRC.

      During the December 2011, hearing, Mr. Simitz explained to the Court that he returned

the documents to Mr. Stone because Mr. Stone was a former client, and the documents were

related to Pinetree—even though the documents were originally in the possession of Plaintiff's

accountant in a file folder related to FRC.  See December 14, 2011 Hearing Tr. at 6.  The Court

then ordered Plaintiff to produce Mr. Stone's contact information so that Defendants could serve

a subpoena to recover the document.  Id. at 7.  Plaintiff provided a post office box number, which

was not where Mr. Stone resided, and Defendants were unable to serve him.  Thompson Cert.,

Ex. Y.  Shortly thereafter Defendants learned that Mr. Simitz was to represent Stone as well.

This Court held a hearing, during which Mr. Simitz agreed to accept service of the subpoena and

to produce the document.  January 24, 2012 Hearing Tr. at 4.  The Court ordered Mr. Stone to

produce the document by January 30, 2012.  Id. at 12; January 24, 2012 Order (ECF No. 49)

("Ordered that Ron Stone shall provide to defense counsel all documents responsive to the

subpoena from defendants on or before January 30, 2012.").

Instead of producing the document, however, Stone submitted an affidavit stating that he had lost the document.  Thompson Cert., Ex. HH (Certification of Ron Stone) ("Though I received the document and it was in my possession, I can no longer locate it.  Because it is now lost, I cannot produce it.").  Defendants have now filed the instant motion seeking sanctions for (1) spoliation, (2) violation of Rule 37, and (3) fees pursuant to 28 U.S.C. § 1357.[4]

## III.  DISCUSSION

The first question is whether spoliation occurred.  If it did, the second question is what sanctions are appropriate.  After the Court discusses these issues, it will address Plaintiff's contention that Defendants committed spoliation by failing to produce a recording of the undercover law enforcement officer's conversations with FRC staff that culminated in Defendants' search of the FRC premises.

### A.  DEFENDANTS' MOTION FOR SPOLIATION

#### 1.  Spoliation

Spoliation refers to the alteration, destruction, or failure to produce evidence relevant to an issue in a case.  Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012).  "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party."  Id.  A litigant is "under a duty

---

[4] The Defendants originally filed the motion on April 13, 2012 (ECF No. 53).  The Court terminated the motion without prejudice because Defendants' brief did not contain a statement of facts or a procedural history, instead pointing to a voluminous record it had attached.  Defendants refiled their motion (ECF No. 59).  Plaintiff requested that the Court treat Plaintiff's opposition to the original motion (ECF No. 56) as the opposition to the refiled motion.  See October 19, 2012 Letter, ECF No. 60.  The Court does so.

to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Scott v. IBM Corp., 196 F.R.D. 233, 249 (D.N.J. 2000).

There is no direct evidence that Plaintiff purposefully destroyed evidence. Instead, the issue centers on whether Plaintiff and Plaintiff's counsel properly oversaw the discovery process or whether they failed to take the necessary steps to ensure the production of relevant documents. The Court has little difficulty in determining that spoliation occurred. First, Plaintiff had control of the document when its counsel unilaterally removed the document from Plaintiff's accountant files.

Second, the Court is satisfied that the evidence is relevant under the broad standard set forth in Federal Rule of Civil Procedure 26. Plaintiff argues in its opposition that the document is irrelevant, now claiming that it is only an employee handbook or training manual, although previously counsel described it as a contract. This shifting explanation of the nature of the document, and the fact that it apparently has been lost, makes it impossible for the Court to review the document, much less make a specific finding of relevance. However, as the Court discussed on the record with the parties on December 14, 2011, there are multiple indications of relevance. First, the document was in the accountant's file specifically consisting of FRC documents. Second, even if the document concerned Pinetree, Defendants have alleged a sufficient relationship between FRC and Pinetree, and between FRC and Mr. Stone, to suggest the document was relevant under Rule 26. December 14, 2011, Hrg., ECF No. 51, at 4:18 to 4:22, 7:25 to 8:15. For those reasons, the Court extended, on December 14, 2011, fact discovery to determine the corporate and financial relationship between Pine Tree Holistics Center, Ron Stone, and FRC. December 14, 2011 Order (ECF No. 48) at ¶ 1. Finally, the Court ordered the

8

production of all documents responsive to the subpoena to Ron Stone.  January 24, 2012 Order, (ECF No. 49) at ¶ 1.

Third, there has been actual withholding of the evidence as Plaintiff's counsel purposefully removed the document from the accountant's files while they were under subpoena. Indeed, Mr. Condosta stated in his affidavit that but for counsel's actions, the document would have remained in his file for inspection by defense counsel.  Thompson Cert., Ex. P.  Moreover, Mr. Simitz mailed the document to Mr. Stone, and did not preserve a copy in case the document was later deemed discoverable,[5] while Defendants were disputing the status of the document. Now, the evidence has apparently been lost.

Plaintiff argues there can be no spoliation because the evidence was not lost "in bad faith."  And in this case, there is no conclusive proof of bad faith.  But the Third Circuit has discussed bad faith in the context of intentional conduct, rather than requiring proof of a nefarious motive:  "[S]poliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced. Withholding requires intent."  Bull, 665 F.3d at 79; MOSAID Techs., Inc . v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 337 (D.N.J. 2004) (collecting cases construing "actual suppression to mean that the evidence must be intentionally or knowingly destroyed or

---

[5] As noted earlier, Plaintiff's counsel initially claimed the document was subject to attorney-client privilege.  Putting aside the question of how the document could remain privileged when it was clearly provided to the accountant, Plaintiff's counsel had a duty to maintain a copy of that document, notify the defense that it was withholding the material, and produce a privilege log.  See Wachtel v. Health Net Inc., 239 F.R.D. 81, 106-107 (D.N.J. 2006) (quoting Fed. R. Civ. P. 26(b)(5), 1993 Advisory Committee Notes).  The entire purpose of the privilege log – i.e., to allow the adversary an opportunity to challenge the invocation of the privilege and, if successful in that challenge, to receive the discovery – is defeated without preservation of the allegedly privileged material.

withheld, as opposed to lost, accidentally destroyed or otherwise properly accounted for."). Although the Court does not find bad faith on the part of Plaintiff or its counsel, it is clear that Plaintiff and its counsel acted intentionally or knowingly in keeping the document from Defendants.  That conclusion is supported by several factors, including (1) Plaintiff's unilateral removal of the document; (2) multiple and conflicting representations to the Court over the nature of the document and whether it was privileged, during which it was mailed to Mr. Stone; (3) failure to maintain a copy of the document while invoking privilege; (4) failure to produce a complete privilege log; (5) failure to provide the correct contact information for Mr. Stone in the first instance; and (6) mailing of the document to Stone without preserving a copy of it.  Plaintiff makes no showing that its actions were accidental or otherwise properly accounted for.

Finally, Plaintiff's duty to preserve the document was clear.  The accountant's file for FRC was already under subpoena by the time Plaintiff's counsel removed the document.[6] Thompson Cert. ¶18.  The accountant was prepared to make the document available, but Plaintiff's counsel intervened.  At that point, a clear duty to preserve evidence was triggered. Plaintiff put this document at issue by removing it from the accountant's files.  Once that was done, counsel had a duty to maintain the evidence removed.  Unanswered is whether Plaintiff's counsel had authority to remove any documents from the accountant's possession at all.  There is no suggestion that Mr. Simitz was Condosta's lawyer, or representing him for purposes of the subpoena, so it is not clear whose privilege was ostensibly being asserted.  There is a complementary question of whether FRC could assert any privilege after it had provided the

---

[6] Additionally, both Rule 26(a) and Defendants' document-production requests required Plaintiff to produce documents related to its claim for damages and the valuation of Plaintiff's business.

document to a third party.  These same concerns apply if the document actually belonged to Mr. Stone.  It is unclear how FRC could assert privilege over a document either completely unrelated to itself or its business.

Assuming Plaintiff's counsel had a good-faith belief that the document was privileged and they were entitled to claim privilege on behalf of FRC, once counsel removed the document, they should have taken efforts to preserve it, or a copy of it, until its status had been resolved. Even accepting as true Plaintiff's assertions, the Court finds that it was Plaintiff's counsel's failure to preserve the document at issue after it was in counsel's possession, and while the status of the document was in dispute, that constitutes the spoliation.

**B.  Sanctions**

Having found that spoliation occurred, the next question is what sanction is appropriate. This analysis is distinct from the Court's spoliation analysis.  Bull, 665 F.3d at 73, n.5 ("Though there is some overlap between the two, there are distinctive elements of each.").  The range of potential spoliation sanctions can range from dismissal of the action, to precluding remedies, to giving the jury an adverse inference instruction, and any sanction may include attorney's fees and costs.  Mosaid Techs. Inc., 348 F. Supp. 2d at 335.

Defendants seek the following sanctions here:

1.  To preclude Plaintiff from seeking any economic losses based on the financial condition of FRC.

2.  As an alternative to No. 1, that the Court give an adverse-inference instruction to the jury.  Defendants would have the instruction state that the jury can infer from the absence of the document that the document would have been unfavorable to Plaintiff's claim for economic damages.

3.  The imposition of attorney's fees and costs to compensate Defendants for their

time and efforts seeking production of the now lost document.[7]

The District Court has authority to impose such sanctions pursuant to the Federal Rules of Civil Procedure and its inherent authority.  N.V.E., Inc. v. Palmeroni, 2011 U.S. Dist. LEXIS 107600, at *12 (D.N.J. Sept. 21, 2011); Scott, 196 F.R.D. at 247-48.  The Third Circuit has explained that the "key considerations in determining whether such a sanction is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."  Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994); see In re Hechinger Inv. Co. of Del., Inc., 489 F.3d 568, 579 (3d Cir. 2007).

The Court finds that the first factor militates in favor of sanctions.  As discussed above, Plaintiff's counsel intentionally removed the files from a third party; they initially claimed privilege, then later retreated from the privilege assertion after twice being ordered to produce a privilege log; and they purposefully relinquished control of the document to a third party in the midst of a dispute as to its status, making no effort to preserve a copy of that document.  Those actions delayed and frustrated the discovery process and eventually prevented discovery of the document.

The second factor requires the Court to assess the degree of prejudice Defendants suffer

---

[7] Defendants are not clear in their briefing precisely what sanctions they are seeking, other than asking the Court to "fashion a sanction that would appropriate address the spoliation of evidence...."  Def. Br. at 27.  Defendants' presentation at oral argument on January 7, 2013, and their proposed form of Order (ECF No. 59-1) provide clarity regarding the contours of the sanctions they seek.

by not having this evidence.  It is difficult, if not impossible, for the Court to affix a specific

degree of significance to the document because the document can no longer be located, neither

defense counsel nor the Court ever had an opportunity to review it, and because Plaintiff's

counsel has not provided a consistent explanation of the contents.  All the Court can say for sure

is that the document was part of materials subject to Defendants' subpoena, it was in the

accountant's files for FRC, that the accountant had prepared them for inspection by Defendants,

and that, according to the accountant, the document would have been received or reviewed by

Defendants pursuant to the subpoena had Plaintiff's counsel not removed it.  Condosta Aff.,

Thompson Cert. Exh. P, ¶¶3-9.  Therefore, the Court cannot discount the possibility that the

document was relevant to the valuation of Plaintiff's business, which is the cornerstone of

Plaintiff's claim for monetary damages.[8]

   To determine what sanctions are appropriate the Court is guided by Third Circuit case

law.  In an unpublished opinion, the Third Circuit affirmed spoliation sanctions after a plaintiff

disposed of evidence that it knew the defendant wished to inspect.  Capogrosso v. 30 River Court

E. Urban Renewal Co., 2012 U.S. App. LEXIS 9835, at *11-12 (3d Cir. May 16, 2012).  There,

plaintiff sought insurance coverage from State Farm for property she claimed was damaged by a

water-pipe incident in her apartment.  Plaintiff's entire case against State Farm rested on the

spoliated evidence.  The Third Circuit affirmed dismissal of the case as an appropriate sanction

and instructed that "[a] party suffers irreparable prejudice where the other party impairs their

---

   [8] Plaintiff can seek such economic damages in a 42 U.S.C. § 1983 action as part of its
prayer for compensatory damages.  A "Federal Court can award § 1983 claimants punitive as
well as economic damages."  Beard v. Borough of Duncansville, 652 F. Supp. 2d 611, 622 (W.D.
Pa. 2009) (citing Brennan v. Norton, 350 F.3d 399, 428-29 (3d Cir. 2006)).

'ability to present a defense on the merits.'" Id. (quoting Gonzalez v. Safe and Sound Security Corp., 185 N.J. 100, 881 A.2d 719, 727 (N.J. 2005)).  The Third Circuit did not comment on the offending party's willfulness other than to say that the attorney "knew" she was disposing of evidence that opposing counsel wished to inspect.  Id.

    In another recent opinion in this district, a court found spoliation sanctions were appropriate when a party was prevented from inspecting potential evidence.  Klett v. Green, No. 10-2091, 2012 U.S. Dist. LEXIS 89115, at *36-38 (D.N.J. June 27, 2012).  Klett involved a vehicle that had been involved in an automobile crash, which was at the center of the dispute.  Id. at *26-27.  Plaintiff had allowed the vehicle to be destroyed by a third party despite having received a notice of inspection from defendants.  Id.  In particular, the court noted that while plaintiff did not herself destroy the vehicle, she was negligent in her duty to preserve evidence—evidence she knew was relevant to the dispute that she brought.  Id. at *31-33.  In light of these facts, the court found that sanctions were appropriate, but declined to determine what those sanctions should be (fines, an adverse inference, or both) until trial.  Id. at *38.

    In both Capogrosso and Klett, it was unclear precisely what opposing counsel would have learned had the evidence been preserved, but it was enough to know that the evidence was related to the matter for a court to impose sanctions.  Likewise, in this case, the Court can infer that Defendants suffered prejudice by not being able to inspect the document.  As the court in MOSAID Techs., Inc. instructed:

> If a party has notice that evidence is relevant to an action, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by that evidence.  By allowing the spoliation inference in such circumstances, the Court protects the integrity of its proceedings and the administration of justice."

MOSAID Techs., Inc., 348 F. Supp. 2d at 337 (relying on Schmid v. Milwaukee Elec. Tool

Corp., 13 F.3d 76, 79 (3d Cir. 1994)).

Courts within the Third Circuit have found a panoply of spoliation sanctions for conduct

that is both similar to and even less concerning than what is at issue here.  Nevertheless, the most

extreme sanction that Defendants seek—preventing Plaintiff from seeking any financial recovery

based on the valuation of its business—is inappropriate here.  A sanction of this nature is

extreme and should be reserved for the most flagrant discovery abuses.  For example, in

Capograsso, plaintiff disposed of the damaged property that was at the very core of her claims

against the insurer, and for which there was no substitute.  Capogrosso, 2012 U.S. App. LEXIS

9835, at *11.

The Court concludes that this extreme sanction is not warranted here for several reasons.

First, this Court has already explained that its decision to impose sanctions is not premised on a

finding of actual bad faith.  Second, the substance, and thus the probative value, of the lost

evidence in this case is more speculative than in Capogrosso.  Third, Defendants' counsel

admitted at the January 7, 2013, oral argument that Defendants had obtained significant other

discovery regarding the valuation of FRC, including but not limited to tax return information,

bank records, and credit card receipts.  Fourth, defense counsel admitted that she had elected not

to pursue additional discovery concerning any link or association between FRC and Pinetree

from other potential sources.  Therefore, the Court finds that a lesser sanction is appropriate to

avoid substantial unfairness to Defendants.

Defendants also seek an adverse inference and monetary sanctions.  An adverse inference

is generally considered one of the lesser punishments a court can give.  "An adverse inference, or

the spoliation inference, is regarded as a 'far lesser sanction,' and is intended to level the playing field between the parties." N.V.E., Inc., 2011 U.S. Dist. LEXIS 107600, at *18-19 (quoting Mosaid Techs., Inc., 348 F. Supp. 2d at 335, 338); see also Schmid, 13 F.3d at 79.  After the Court gives such an instruction, the jury is allowed, but not required to, assume that "the party that has prevented production did so out of the well-founded fear that the contents would harm him." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995); see also Canton v. Kmart Corp., 470 Fed. Appx. 79, 85 (3d Cir. 2012) (finding an adverse inference is appropriate when "the contents of a document are relevant to an issue in the case" and the document has been lost).  An adverse inference should not be given when the facts show that "the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Id. at 334; Omogbehin, 2012 U.S. App. LEXIS 12545, at *8-9 (3d Cir. N.J. June 20, 2012).  As discussed above, Plaintiff makes no such showing here.

As for monetary sanctions,[9] Defendants request an award of attorney's fees and costs associated with identifying the destroyed evidence and the filing of this motion.  Monetary sanctions may be imposed in spoliation cases to compensate  a party for the "time and effort it was forced to expend in an effort to obtain discovery" to which it was otherwise entitled. MOSAID Techs. Inc., 348 F. Supp. 2d at 339.  These sanctions often take the form of reasonable attorney's fees and the lodestar method of calculation is used.  N.V.E., Inc., 2012 U.S. Dist.

---

[9] Defendants argue that fees and costs are appropriate under 28 U.S.C. § 1927. Additionally, the Court can also issue a sanction for fees and costs under its inherent authority to issue spoliation sanctions.  MOSAID Techs. Inc., 348 F. Supp. 2d at 339.

LEXIS 128319, at *24.[10]

A number of courts have found that both an adverse inference and monetary sanctions are appropriate when spoliation occurs, even if that spoliation was not willful.  In <u>MOSAID Techs. Inc.</u>, the district court affirmed the magistrate's finding of an adverse inference and over $500,000 in monetary sanctions for attorney fees when Samsung failed to implement a proper litigation hold after the inception of the case and numerous relevant emails and other e-discovery materials were destroyed.  <u>MOSAID Techs. Inc.</u>, 348 F. Supp. 2d at 338-40.  Similarly, in <u>N.V.E., Inc.</u>, the district court granted monetary sanctions when counsel failed to implement the necessary litigation holds and preserve documents that counsel knew or should have known would be relevant to that matter.  <u>N.V.E., Inc.</u>, 2011 U.S. Dist. LEXIS at * 12; <u>see also</u> <u>TeleQuest Int'l Corp. v. Dedicated Bus. Sys.</u>, 2009 U.S. Dist. LEXIS 19546 (D.N.J. Mar. 11, 2009) (finding adverse inference and monetary sanctions appropriate when defendant deleted computer files after the litigation had begun and in violation of a court order requiring preservation of relevant materials).  In neither case, did the court find that the conduct was willful or require such a finding before imposing monetary sanctions.

The conduct at issue here is more egregious than failing to implement proper litigation holds.  As discussed above, knowingly relinquishing control over relevant evidence subject to subpoena is well within the range of conduct that courts in the Third Circuit have found deserving of sanctions, including both adverse inferences and monetary sanctions.  Considering

---

[10] There are two opinions in the <u>N.V.E.</u> matter to which the Court cites.  The first, the 2011 Opinion, found that spoliation sanctions were appropriate, including monetary sanctions, and ordered further briefing regarding the expenses that counsel incurred in relation to the spoliation issue.  The second, the 2012 Opinion, considered that briefing and determined the appropriate sanctions.

the lengths that Defendants have had to go to seek this evidence, due largely to Plaintiff's

conduct, the Court finds that sanctions in the form of (1) an adverse inference that the missing

twenty pages would have been unfavorable to Plaintiff's claim for economic damages, and (2)

monetary sanctions, are appropriate.

Consistent with the court's approach in MOSAID Techs. Inc., the Court will afford the

parties an opportunity to submit proposed jury instructions regarding the adverse inference.

MOSAID Techs. Inc., 348 F. Supp. 2d at 334.  Additionally, further submissions are necessary

before the Court can impose a fixed amount of monetary sanctions, because Defendants have not

submitted a specific number or analysis of the amount of sanctions they seek.  Therefore,

Defendants may file an affidavit in support of their application for monetary sanctions setting

forth a description of the services for which they seek fees and how those services are related to

this dispute, the total hours worked, the rate charged, any costs Defendants are seeking, and all

other applicable information necessary for the Court to perform a lodestar calculation, by

**January 29, 2013**.  By that date, Defendants also shall submit their proposed adverse inference

jury instruction and explanation of the legal basis for it.  Plaintiff may respond by **February 12,**

**2013.**[11]

---

[11] Defendants also argue that sanctions are appropriate under Federal Rule 37(b).  Two
conditions must be satisfied before a Court may entertain such a motion: (1) a court order or
direction must have been violated and (2) that order or direction must have been violated by a
party to the litigation.  General Ins. Co. of Am. v. Eastern Consol. Util., Inc., 126 F.3d 215, 220
(3d Cir. 1997) (finding district court improperly imposed Rule 37(b) sanction on nonparty).
Defendants do not set out what order was violated by Plaintiff and how.  The Court had ordered
Stone, a third-party, to produce the document.  January 24, 2012 Order (ECF No. 49).  This order
was not directed at a party.  Therefore, based on the inadequate showing by Defendants, the
Court cannot find that a Rule 37(b) sanction is appropriate.  Nevertheless, this finding does not
prevent the Court from exercising its inherent authority and other authority under the rules to
(continued...)

### B.  PLAINTIFF'S APPLICATION FOR SANCTIONS

Plaintiff also seeks sanctions against Defendants for spoliation, asserting that Defendants failed to produce a recording of conversations between the undercover police officer who entered Plaintiff's business and Plaintiff's employee who allegedly propositioned the officer to perform a sexual act in exchange for money.  Plaintiff's Opp'n Brief, ECF No. 56, at 8-9.  Plaintiff argues that N.J.S.A. 2A:156A-14 requires police officers to record all conversations captured by an electronic transmission device, and to preserve such recordings.  Id. at 9.  Plaintiff further argues that Defendants never disclosed the recording or its loss throughout the litigation, even as the law required Defendants to possess and preserve the recording.  Id. at 10.  Plaintiff further argues that the recording is relevant because it "contains the only evidence of the alleged prostitution solicitation and thus the probable cause to enter Plaintiff's business."  Id.  Plaintiff makes essentially what is commonly known as a "fruit of the poisonous tree" argument under the Fourth Amendment – i.e., if there was no evidence that the employee proposed sex for money, then there was no probable cause for the officers to enter the premises, conduct arrests, or conduct a search incident to the arrests.  Id.  Therefore, Plaintiff seeks a spoliation inference for both summary judgment and trial.  Id.  Defendants argue that this argument is merely a red-herring to deflect attention away from Plaintiff's conduct.

Plaintiff presents this argument in its opposition brief, and not as a cross-motion.  And quite unlike the sanction issue underlying Defendants' motion, the Court is unaware of any time during the discovery process that Plaintiff raised with the Court its difficulty in obtaining the

---

[11](...continued)
issue sanctions for spoliation as discussed above.

recording, if it even exists.  In short, the Court's review of the docket suggests that Plaintiff's

opposition brief is the first time that Plaintiff has brought the issue to the Court's attention.  That

is so even though fact discovery ended on January 31, 2012.  Indeed, Plaintiff has provided no

exhibit, such as a document-production request, to establish that it even requested the recording

in discovery.  Defendants assert that "Plaintiff has never prior to submitting this argument even

made a request for any such recordings."  Defendants' Reply Brief, ECF No. 57, at 5.[12]

      Additionally, Defendants argue that Plaintiff has not established that Defendants had

possession, custody, or control of the evidence or that the material is relevant to this civil matter.

Undoubtedly, such recordings might have been relevant to any criminal proceeding brought

against Plaintiff, and might have triggered an obligation by the Government to produce them in a

criminal proceeding, particularly in response to a suppression motion or other challenge to

probable cause for a search or arrest.  But that obligation does not automatically arise in this civil

litigation, particularly absent any request for the material by Plaintiff.  See, e.g., Fed. R. Civ. P.

26(a) (required initial disclosures).  Certainly, Plaintiff has provided no such legal authority for

that proposition.

      Finally, it is unclear whether N.J.S.A. 2A:156A-14 applies when the recordings are made

---

[12] Plaintiff's argument presumes that Defendants had an affirmative obligation to preserve
evidence that Defendants never possessed, Plaintiff never requested, and that no one can be sure
ever existed.  Plaintiff argues that Defendants, during the undercover operation, were required by
state law to record the operation and preserve that recording.  However, Plaintiff provides no
authority for its presumption that N.J.S.A. 2A:156A-14 imposes such a requirement for
consensual recordings.  See State v. Schultz, 176 N.J. Super. 65 (App. Div. 1980) (holding that
N.J.S.A. 2A:156A-14 "does not apply to consensual recordings but only to judicially authorized
intercepts.").  Additionally, Defendants represent that they conducted the undercover operation as
part of a joint operation with the Fort Lee Police Department.  Defts' Reply Brief, ECF No. 57, at
5.  It is unclear whether Plaintiff ever sought to obtain the recording from the Fort Lee Police
Department.

where one party consents to the recording.  For these reasons, the Court denies Plaintiff's request for spoliation sanctions.

**IV.  CONCLUSION**

Because Plaintiff failed to preserve evidence while withholding it, the Court finds that spoliation occurred and that Defendants are entitled to an adverse inference as well as fees and costs.  An appropriate Order will follow.

January 14, 2013                                    s/ *Michael A. Hammer*                                    
                                                    Hon. Michael A. Hammer
                                                    United States Magistrate Judge